# UNITED STATES DISTRICT COURT
## FOR THE

**FILED**

KC

DEC 1 8 2007

December 18, 2007

MICHAEL W. DOBBINS

DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

## AFFIDAVIT OF COMPLAINT (OR INDICTMENT) IN REMOVAL PROCEEDINGS

UNITED STATES OF AMERICA     )

                               )        **07CR   0848**

NORTHERN DISTRICT OF ILLINOIS     )    CASE NUMBER:_____

MAGISTRATE JUDGE SCHENKIER

The undersigned Affiant personally appeared before Sidney I. Schenkier, a United States

Magistrate Judge, and being duly sworn on oath, states: That at Harrisburg, Pennsylvania (U.S.

District Court for the Middle District of Pennsylvania), one RAJESH KATWA was charged with

the violation of 8 U.S.C. § 1324 and 18 U.S.C. § 371 for the offenses of knowingly conspiring to

commit an offense and to defraud the United States; to wit: operating together to bring and attempt

to bring unauthorized aliens into the United States, knowingly and in reckless disregard of the aliens'

illegal status, and that on the basis of Affiant's investigation and information received concerning

the case through official channels, does hereby certify that an Arrest Warrant is outstanding for the

arrest of said defendant.

Wherefore, Affiant prays that the defendant be dealt with according to law.

ERIC J. EVANS, Special Agent
Immigration and Customs Enforcement

Subscribed and Sworn to before me this
___ day of December 2007.

_____
United States Magistrate Judge

CHRISTOPHER R. MCFADDEN
Assistant U.S. Attorney

Bond set [or recommended] by issuing Court at _____

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

vs.                                    CR. NO.    07-MJ-138

RAJESH KATWA,                  WARRANT FOR ARREST

To:  The United States Marshal
     and any Authorized United States Officer

        YOU ARE HEREBY COMMANDED to arrest <u>RAJESH KATWA</u>

and bring him or her forthwith to the nearest magistrate to answer a(n)

[] Indictment   [] Information      [X] complaint

[]Court Order        [] Violation Notice      [] Bail Violation Petition

charging the defendant with (brief description of offense)

knowingly conspiring to commit an offense and to defraud the United States; to wit: operating together to bring and attempt to bring in unauthorized aliens into the United States, knowingly and in reckless disregard of the aliens' illegal status, in violation of Title 8 United States Code Section 1324 and Title 18, United States Code Section 371.

_J. ANDREW SMYSER_
Name of Issuing Officer

_(signature)_
Signature of Issuing Officer

<u>United States Magistrate Judge</u>
Title of Issuing Officer

<u>Harrisburg, Pa.</u>
Date and Location    _Nov. 30, 2007_

Bail fixed at $ _____ by _____
                          Name of Judicial Officer

### RETURN

This warrant was received and executed with the arrest of the above-named Defendant at

DATE RECEIVED: _____

DATE OF ARREST: _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :     CRIMINAL NO. *07/478*

       v.               :     (Judge *Caldwell* )

:

NARESH PATEL, DINESH DIWAN,    :
RAKESH PATEL, HIREN MEHTA,     :
RAJESH KATWA, JITENDRA SHETH, :
ASHA VERMA,                     :
BIBIN BALACHANDARAN,        :
and SANDIPKUMAR PATEL      :

FILED
HARRISBURG, PA

DEC 1 2 2007

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

### I N D I C T M E N T

### INTRODUCTION

### COUNT I

THE GRAND JURY CHARGES THAT:

1.     Beginning on or about 2003, and continuing up through on or about December 2007, in Dauphin and York Counties, within the Middle District of Pennsylvania, and elsewhere, the defendants –

**NARESH PATEL, DINESH DIWAN, RAKESH PATEL, HIREN MEHTA, RAJESH KATWA, JITENDRA SHETH, ASHA VERMA, BIBIN BALACHANDARAN, SANDIPKUMAR PATEL**

did knowingly combine, conspire, confederate and agree together with persons known to the Grand Jury to violate the laws of the United States; namely:

A. By bringing and attempting to bring unauthorized aliens into the United States, transporting them within the United States, harboring unlawful aliens, and conspiring to commit these violations, knowingly and in reckless disregard of the aliens' illegal status, in violation of Title 8, United States Code, Section 1324;

B. By willfully and knowingly using any passport in violation of the conditions or restrictions therein contained, or of the rules prescribed pursuant to the laws regulating the issuance of passports; to wit:  delivering Indian passports to undercover agents as part of an attempt to bring in unauthorized aliens into the United States, knowingly and in reckless disregard of the aliens' illegal status, in violation of Title 18, United States Code, Section 1544;

C. By using, attempting to use, possessing, obtaining, accepting, or receiving documents prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to have procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained; to wit:  they received valid Employment Authorization Documents believing that they had been obtained through fraud, in violation of Title 18, United States Code, Section 1546, and

D. By knowingly possessing identification documents, i.e. passports, with the intent such document be used to defraud the United States, in violation of Title 18, United States Code, Section 1028.

2.    In furtherance of this conspiracy and to attain the objects of the conspiracy the conspirators committed the following overt acts among others:

(1). On July 1, 2003, NARESH PATEL met with persons known to the Grand Jury, in Atlantic City, New Jersey. During the meeting, NARESH PATEL stated that he was looking for a contact within U.S. Immigration to assist him in smuggling Indian nationals from India into the United States. NARESH admitted that he was paying an immigration official who was working at Newark International Airport and John F. Kennedy Airport $8,000 per person to assist him in bringing aliens into the U.S. NARESH stated that Indian citizens with a valid U.S. visa were offered money for the use of their visas and passports. NARESH then arranged to replace the photographs in the visas and passports with photos of the people he was attempting to smuggle into the United States. NARESH claimed that he could bring in six Indian nationals every day. NARESH stated that he could arrange to bring Indian nationals to any airport in the U.S. NARESH stated that he was open to smuggling the aliens from a third country or aboard cruise ships from South America if the agents could arrange such an event. During the meeting, NARESH said that he had been involved in human smuggling since 1988 or 1989 in Chicago, Illinois. NARESH also stated that he used to be involved in a smuggling operation that would bring Indian nationals from India to Cuba. From Cuba, he would move the Indians to Cancun, Mexico and then onto

Tijuana, Mexico. From Tijuana, he would arrange to bring the aliens across the U.S. – Mexican border on foot.

(2).    In August 2006, NARESH PATEL contacted an individual known to the Grand Jury to inquire about a new human smuggling contact.

(3).    On September 6, 2006, NARESH PATEL met individuals known to the Grand Jury at Penn National Off-Track Wagering located at 351 Loucks Road, York, Pennsylvania 17404. During the meeting, NARESH PATEL stated that he was interested in smuggling primarily Indian nationals into the United States. He also stated that he would also like to bring a small number of Chinese and Egyptian nationals into the U.S. NARESH PATEL agreed to pay $12,000 for every alien they smuggled into the United States.

(4).    On September 7, 2006, NARESH PATEL met persons known to the Grand Jury at the Bob Evans restaurant at 303 Arsenal Road, York, Pennsylvania 17402. During the meeting, NARESH PATEL stated that he had been involved in alien smuggling since 1992. During the same meeting, NARESH PATEL agreed to arrange for the aliens to fly from India to Johannesburg, South Africa. .

(5).    On September 27, 2006, NARESH PATEL stated that he was taking steps to move six Indian nationals from India to Manila, Philippines instead of South Africa.

(6).    On October 23, 2006,  NARESH PATEL requested that a person known to the Grand Jury mail the six passports back to him.  NARESH stated that someone would bring the passports back to India so the aliens could use their passports to fly to Manila, Philippines.  NARESH instructed this person to repackage the passports in the same manner in which they were received and mail them to VIDEO CORNER, 2300 South Elmhurst Road, Mt. Prospect, Illinois 60026.

(7).    On December 1, 2006, NARESH PATEL telephoned a person known to the Grand Jury to inform him that the Indians were unable to obtain visitor's visas for the Philippines.  During telephone conversations, NARESH stated that he would be able to send the Indians from India to Bangkok, Thailand in the future.  NARESH agreed to pay for any expenses incurred for the planning and execution of the trip to the Philippines.

(8).    On January 22, 2007, persons known to the Grand Jury spoke with NARESH PATEL via telephone.  NARESH agreed to send $5,000 as down payment for smuggling six Indian nationals from Bangkok, Thailand into the United States.

(9).    On February 9, 2007, NARESH PATEL informed persons known to the Grand Jury that the group of six Indian nationals had arrived in Bangkok, Thailand.  He stated that the group was staying at the Royal Park View

Hotel. NARESH provided a hotel room number and a contact telephone number for the group . NARESH later arranged to move the group to the Diamond City Hotel to save money.

(10). Between February 28, 2007, and March 4, 2007, persons known to the Grand Jury met the six aliens at the Diamond City Hotel in Bangkok and arranged for their transportation to the airport. During the meeting, one of the aliens telephoned NARESH PATEL.

(11). On March 5, 2007, the six Indian nationals and persons known to the Grand Jury boarded a flight in Bangkok, Thailand and flew to Los Angeles, California. Upon their arrival in Los Angeles, the aliens believed they were being smuggled into the U.S. using counterfeit Permanent Resident Alien cards which were shown to the aliens. On March 6, 2007, the six aliens flew from Los Angeles, California to Philadelphia, Pennsylvania. After arriving in Philadelphia, the aliens traveled to the Red Roof Inn in York, Pennsylvania.

(12). On March 5, 2007, NARESH PATEL instructed a person known to the Grand Jury to travel with NARESH'S cousin, RAKESH PATEL, to pick up the aliens. This person flew from Chicago to Harrisburg, Pennsylvania with RAKESH PATEL on March 7, 2007. Upon their arrival, they rented a car and drove to the Dunkin' Donuts located at 107 North 2nd Street, Harrisburg, Pennsylvania. Upon entering the store, RAKESH introduced himself to the owner

and told him they had come from Chicago. Upon hearing this, the owner

summoned an employee from an apartment above the Dunkin' Donuts. The

employee stated that one of the Indians they were picking up was the employee's

cousin. Later that day, the unknown man and woman arrived from New York.

After the arrival of the two individuals from New York, the four traveled in two

cars to the Red Roof Inn in York, Pennsylvania.

(13). On March 7, 2007, persons known to the Grand Jury met

RAKESH PATEL, and an unknown Indian male and unknown Indian female who

arrived from New York at the Red Roof Inn in York, Pennsylvania. At this

meeting, the unknown female paid $25,000 in cash. This was the exact amount of

the alien smuggling fee discussed in an earlier telephone call with NARESH

PATEL. After the money was paid, the six Indian nationals were turned over to

NARESH PATEL'S associates. After picking up the aliens, the two individuals

took three aliens in their car to an unknown destination and RAKESH PATEL

drove the other three Indians to the Dunkin' Donuts in Harrisburg, Pennsylvania.

They brought the Indians into the Dunkin' Donuts. The employee whom they met

earlier took the Indians to an apartment above the store.

(14). On March 8, 2007, NARESH PATEL stated that he had sent

$35,000 in money orders to an person known to the Grand Jury. The money

orders were intended as partial payment for alien smuggling.

(15).  On March 12, 2007, NARESH PATEL stated, during a telephone conversation that he had sent $25,000 in money orders to and ICE-controlled commercial mailbox.  The money orders were intended as partial payment for alien smuggling

(16).  On March 14, 2007, NARESH PATEL stated that he had sent $18,000 in money orders to a mailbox.  The money orders were intended as the final payment for alien smuggling.

(17).  On March 23, 2007, during a telephone call NARESH PATEL stated that he would be sending a third set of passports to persons known to the Grand Jury.

(18).  On April 5, 2007, persons known to the Grand Jury met with NARESH PATEL at the Marriott Chicago Midway Hotel located at 6520 South Cicero Avenue, Chicago, Illinois 60638.  During the meeting, NARESH PATEL stated that he would be reporting to an unnamed prison in Pennsylvania on April 30, 2007.  He stated that he would be serving six months in prison for a "problem" involving untaxed cigarettes.  PATEL stated that he wanted to continue with the alien smuggling operation while he was in prison.  NARESH PATEL told the agents that his cousin RAKESH PATEL, the individual that picked-up the first set of aliens from York, Pennsylvania in March 2007, would be responsible for picking-up the next group of aliens.  Another employee at the video store,

JITENDRA "JACK" SHETH, would be responsible for paying the agents for the subsequent smuggling loads while NARESH was in prison. NARESH also instructed these persons to not return the passports to the Indian nationals after they arrived in the United States during future smuggling operations. Instead, they were to send the passports to NARESH PATEL or his associates. NARESH explained that if he controlled their passports, it would give him and his organization more leverage in collecting the money owed as a smuggling fee from the families of the smuggled Indians.

(19).    On April 6, 2007, persons known to the Grand Jury met with NARESH PATEL at the VIDEO CORNER, owned and operated by NARESH PATEL, located at 2300 South Elmhurst Road, Mt. Prospect, Illinois 60056. At the store, NARESH introduced the agents to an individual behind the counter as "Jack." "Jack" has been identified as JITENDRA SHETH. During a meeting in the back of the store, NARESH PATEL told persons known to the Grand Jury that if they needed to contact him, they should call JITENDRA SHETH at the store or send a fax to the store. NARESH stated that SHETH would read the fax and then shred it immediately. NARESH also stated that he would be handing his cell phone to RAKESH PATEL upon NARESH reporting to prison so the agents could contact RAKESH PATEL at any time.

(20). On April 27, 2007, during a telephone conversation between NARESH PATEL stated that he had more passports in his possession. NARESH also claimed that thirty (30) more passports were being sent to him from India. All of these passports belonged to Indian nationals that he wanted smuggled into the United States. NARESH also said that he wanted to send down-payment money for the next group of aliens to be smuggled.

(21). On May 7, 2007, eight color copies of Indian passports were retrieved from "N. PATEL, 2300 S. Elmhurst Rd., Mt. Prospect, IL 60056." The package also contained $20,000 in money orders. The money orders were intended as a down-payment for the next group of aliens to be smuggled into the United States.

(22). On May 11, 2007, eight color copies of Indian passports were retrieved from "N. PATEL, 2300 S. Elmhurst Rd., Mt. Prospect, IL 60056." This is the address of a video store owned and operated by NARESH PATEL.

(23). On May 25, 2007, NARESH PATEL surrendered to the U.S. Marshal's Office and began serving a six month prison sentence at the Federal Penitentiary in Lewisburg, Pennsylvania for offenses related to the smuggling of untaxed cigarettes. Audio recordings of monitored telephone conversations reveal that NARESH PATEL continued to conspire with his various associates to smuggle aliens into the United States while in prison.

(24).  On May 30, 2007, JITENDRA "JACK" SHETH left a voice mail message with a person known to the Grand Jury.  The call was placed from cell phone number (847) 845-2485.  This cell phone number is registered to NARESH PATEL.

(25).  On June 1, 2007, a person known to the Grand Jury placed a telephone call to (847) 845-2485.  The phone was answered by an individual who identified himself as "HIREN", but stated that most people call him "BABA." "BABA" stated that NARESH PATEL was out of the country and that "BABA" was now the point of contact for the smuggling organization. A person known to the Grand Jury then called SHETH at the Video Corner to ask about "BABA." SHETH stated that "HIREN" or "BABA" was an old friend that could be trusted. SHETH stated that NARESH PATEL was traveling in South America and that "BABA" would be handling matters while NARESH was away.  When SHETH was asked if he would still be responsible for the money for any future transactions, SHETH stated that he would.  SHETH also stated that RAKESH PATEL was in a serious automobile accident and could not be involved in any part of the smuggling operation until he recovered.  A person known to the Grand Jury then telephoned "BABA" and told him that they could not talk about future business deals until they met in person.  "BABA" agreed to fly to Philadelphia, Pennsylvania to meet.  "BABA" was later identified as HIREN MEHTA.

(26). On June 4, 2007, persons known to the Grand Jury met with HIREN MEHTA in the restaurant located in the Marriott Hotel, Philadelphia International Airport, Philadelphia, Pennsylvania. During this meeting, MEHTA stated that he had been designated by NARESH PATEL to handle the next group of aliens that were to be smuggled from Thailand into the United States. During the meeting, MEHTA also identified "DINESH" as a "boss" in the organization who supplied the bodies from India. "DINESH" was later fully identified as DINESH DIWAN. MEHTA also agreed to fax the names and passport numbers of the aliens that the group wanted smuggled from Bangkok, Thailand to the United States during the next operation.

(27). On June 5, 2007, a fax arrived from HIREN MEHTA, a/k/a "BABA." The fax listed eleven names, all with the last name "PATEL," and eleven corresponding passport numbers. Six of the names and passport numbers matched those on the passports sent by NARESH PATEL to undercover agents on December 11, 2006. The other five names and passport numbers matched those on the passports sent by NARESH PATEL to undercover agents on March 27, 2007.

(28). On June 8, 2007, a person known to the Grand Jury received a telephone call from (513) 652-2694. An individual, identifying himself as "DINESH," stated that "the bodies are in Bangkok and I have money for you."

(29). HIREN MEHTA was driven to a Dunkin' Donuts located at 6100 South Western Avenue, Chicago, Illinois on June 9, 2007. At the Dunkin' Donuts, MEHTA received $50,000 in cash. This money was intended to pay for the next group of smuggled aliens. MEHTA stored the cash at the VIDEO CORNER, located at 2300 South Elmhurst Road, Mt. Prospect, Illinois.

(30). On June 11, 2007, ASHA VERMA, the girlfriend of NARESH PATEL, asked a person known to the Grand Jury, at the request of NARESH, to hold onto the $50,000 until the next smuggling load arrived. This person picked up $45,000 from VERMA'S apartment, and along with VERMA then went to the VIDEO CORNER where SHETH provided another $5,000

(31). On June 11, 2007, a person known to the Grand jury placed a telephone call to HIREN MEHTA at (847) 922-5828. This is a cell phone number registered to NARESH PATEL. MEHTA stated that people were in Bangkok, Thailand waiting to be smuggled into the United States. MEHTA agreed to arrange a meeting with DIWAN in Harrisburg, Pennsylvania on June 13, 2007. MEHTA also stated that DIWAN is responsible for finding customers in India and moving the bodies from India to Thailand.

(32). On June 13, 2007, persons known to the Grand Jury met HIREN MEHTA and DINESH DIWAN outside of the Dunkin' Donuts located at 107 North 2nd Street, Harrisburg, Pennsylvania. The group walked to Molly

Brannigan's, located at 31 North 2nd Street, Harrisburg, Pennsylvania to discuss their smuggling operation. During this meeting, DIWAN and MEHTA were informed that the Indians currently in Thailand would either have to return to India or extend their Thai visitor's visas because they were not able to smuggle them into the United States at this time. DIWAN and MEHTA were also informed that they could only smuggle six aliens at a time, not eleven. DIWAN complained, with MEHTA acting as a translator, that sending the aliens back to India only to return them to Thailand later would cost him a lot of money. Later in the meeting, DIWAN stated that he was involved in the smuggling operation in which the Indians were denied visas to the Philippines. DIWAN stated that he had personally traveled to the Philippines as part of the failed operation.

(33). During the meeting that took place at Molly Brannigan's in Harrisburg, Pennsylvania on June 13, 2007, DINESH DIWAN was informed that persons known to the Grand Jury could obtain employment authorization documents for DIWAN and his wife by filing fraudulent paperwork claiming that DIWAN and his wife worked for their company. On June 18, 2007, persons known to the Grand Jury retrieved a package, dated June 14, 2007, and post marked from Flushing, New York. The return address was listed as "DINESH DIWAN, 4851 Kedvale Ave., 2nd Floor, Chicago, Illinois 60630. The package contained color photocopies of DINESH DIWAN'S passport and his wife,

CHETNA DIWAN'S passport. On June 25, 2007, DINESH DIWAN departed the United States for India.

(34). On July 5, 2007, a person known to the Grand Jury placed a telephone call to (847) 922-5828, a cell phone registered to NARESH PATEL. RAKESH PATEL answered the telephone and stated that he was now the point of contact for the alien smuggling operation. RAKESH stated that he was in possession of NARESH'S cell phones. He also stated that he would also be the person responsible for paying for the next group of aliens to be smuggled into the U.S. RAKESH agreed to have the next group of aliens in Bangkok, Thailand by July 22, 2007.

(35). On July 12, 2007, during a telephone conversation, RAKESH PATEL confirmed that the next group of six Indians would be in Bangkok, Thailand by July 22, 2007. RAKESH agreed to fax him copies of the aliens' plane ticket receipts for their trip from India to Thailand. On July 13, 2007, a fax arrived sent by RAKESH PATEL. The fax contained the travel itinerary from a travel agency in India for six individuals. The names matched those on the passports that were sent by NARESH PATEL on December 11, 2006.

(36). On or about July 16, 2007, at the request of RAKESH PATEL and ASHA VERMA, $40,000 was delivered to VERMA. On July 23, 2007, RAKESH PATEL told VERMA to obtain the remaining $9,800 (the other $200

had been wired to NARESH PATEL via Western Union previously) in order to pay expenses that were being incurred by the Indians in Thailand as well as expenses that would be incurred by RAJESH KATWA who was scheduled to travel to Harrisburg, Pennsylvania to pick-up the aliens.

(37). On July 22, 2007, RAKESH PATEL telephoned a person known to the Grand Jury to inform him that the six Indian nationals had arrived in Bangkok, Thailand. RAKESH agreed to fax all of the contact information for the aliens. On July 23, 2007, a fax arrived which contained the address, hotel room number, and telephone number for the aliens in Bangkok, Thailand. The address matched that of the Diamond City Hotel; the same hotel the first group was placed into.

(38). On August 2, 2007, persons known to the Grand Jury flew to Bangkok, Thailand. On August 5, 2007, persons known to the Grand Jury met the six aliens at the Diamond City Hotel in Bangkok and arranged for their transportation to the airport.

(39). On August 6, 2007, during a prison telephone call between NARESH PATEL, RAKESH PATEL, and ASHA VERMA, NARESH instructed VERMA that she will be the "safe keeper" of the proceeds of the alien smuggling. NARESH explained that RAKESH will be in charge of distributing money to whomever they owe money.

(40).  On August 7, 2007, persons known to the Grand Jury boarded a flight with the six Indian nationals in Bangkok, Thailand and flew to Los Angeles, California.

(41).  On August 8, 2007, the six aliens flew from Los Angeles, California to Philadelphia, Pennsylvania.  After arriving in Philadelphia, the Indian nationals were driven to the Super 8 Motel in Harrisburg, Pennsylvania.

(42).  On August 8, 2007, persons known to the Grand Jury met RAJESH KATWA at the Super 8 Motel located at 4131 Executive Park Drive, Harrisburg, Pennsylvania.  At this meeting, KATWA handed over $30,000 in money orders.  This was the exact amount asked agreed to during earlier telephone calls with RAKESH PATEL.  After the money was paid, the six Indian nationals were turned over to KATWA.

(43).  On August 14, 2007, RAKESH PATEL telephoned a person known to the Grand Jury  to inform him that he sent $22,000 in money orders to him.  The money orders were intended as final payment for alien smuggling.  On August 15, 2007, a Federal Express envelope containing $22,000 in money orders arrived along with an air waybill, dated 8/13, which identified the shipper as "N. PATEL" with an address of 2300 South Elmhurst Road, Mt. Prospect, IL  60056.  This is the address of the video store owned by NARESH PATEL.

(44).    On September 3, 2007, in an attempt to ascertain when

DINESH DIWAN was returning to the United States, a person known to the Grand

Jury placed a telephone call to  (352) 484-5099.  A male with an Indian accent

answered the telephone and identified himself as "Bob."  "Bob"stated that he is a

good friend of DINESH DIWAN.  "Bob" also requested that this person assist him

in smuggling aliens from India into the United States. "Bob" was later identified

as Bibin BALACHANDARAN.

(45).  On September 21, 2007, during a telephone conversation,

RAKESH PATEL informed that he was awaiting eight (8) passports from

DINESH DIWAN.  RAKESH agreed to mail the passports to persons known to

the Grand Jury.  On September 27, 2007, Indian passports were received by

persons known to the Grand Jury with the return address "N. PATEL, 2300 S.

Elmhurst Rd., Mt. Prospect, IL  60056."  This is the address of a video store

owned and operated by NARESH PATEL.

(46). On October 8, 2007, persons known to the Grand Jury met

BIBIN BALACHANDARAN at a Champps Restaurant located at 2100 South

Columbus Boulevard, Philadelphia, Pennsylvania.  During this meeting,

BALACHANDARAN requested that persons known to the Grand Jury  assist

them in smuggling Indian nationals into the United States from Bangkok,

Thailand.

(47).  On November 21, 2007, persons known to the Grand Jury met at the Penn National Off Track Wagering located at 351 Loucks Road, York, Pennsylvania.  During this meeting, persons known to the Grand Jury received a Dunkin' Donuts box containing six Indian passports.  These six passports belong to six Indian nationals that BALALCHANDARAN wanted to smuggle into the U.S.  No U.S. stamps or visas were found inside any of the passports.

(48). On December 5, 2007, persons known to the Grand Jury met with DINESH DIWAN, SANDIPKUMAR PATEL, and BIBIN BALACHANDARAN at Penn National Off-Track Wagering located at 351 Loucks Road, York, PA.  During this meeting, the participants discussed future human smuggling deals.  PATEL, BALACHANDARAN, and DIWAN (with PATEL and BALACHANDARAN acting as translators) discussed moving Indian nationals to Bangkok, Thailand and then paying to bring them to the United States.

(49). On December 5, 2007, persons known to the Grand Jury met with NARESH PATEL and RAKESH PATEL at NARESH'S place of business, Video Corner, located at 2300 S. Elmhurst Rd., Mt. Prospect, IL.  During this meeting, the participants discussed future human smuggling operations.  NARESH stated that he was not in possession of any passports at the time, but that he expected to receive a shipment in the next few days.  NARESH also handed over $5,000 in money orders as a down payment for future smuggling operations.

(50). On December 5, 2007, ASHA VERMA was at an apartment shared by her and NARESH PATEL located at 2330 S. Cannon Rd., Mt. Prospect, IL where VERMA and PATEL possessed various business documents, $61,000 in money orders, $8,318 in cash, and several color photocopies of passports.

All in violation of Title 18, United States Code, Section 371.

## COUNT II

### THE GRAND JURY FURTHER CHARGES THAT:

3. Beginning on or about 2003 and continuing up through on or about

December 2007, in Dauphin and York Counties, in Middle District of

Pennsylvania, and elsewhere, the defendants

**NARESH PATEL, DINESH DIWAN, RAKESH PATEL, HIREN MEHTA, RAJESH KATWA, JITENDRA SHETH, ASHA VERMA, BIBIN BALACHANDARAN, SANDIPKUMAR PATEL**

aided and abetted by each other and by others known and unknown to the

Grand Jury, did knowingly transport and move, and attempt to transport and move,

for purposes of commercial advantage and private financial gain, illegal aliens

within the United States by means of transportation, knowing and with reckless

disregard of the fact that these aliens had come to, entered, and remained in the

United States in violation of law.

All in violation of Title 8, United States Code, Sections 1324 (a)(1)(A)(ii)

and (a)(1)(B)(ii).

## COUNT III

**THE GRAND JURY FURTHER CHARGES THAT:**

4. Upon conviction of the offense alleged in Count I of this Indictment,

defendants,

### NARESH PATEL, DINESH DIWAN, RAKESH PATEL, HIREN MEHTA, RAJESH KATWA, JITENDRA SHETH, ASHA VERMA, BIBIN BALACHANDARAN, SANDIPKUMAR PATEL

Shall forfeit to the United States, pursuant to Title 18, United States Code,

Section 982(a)(6)(A) any property constituting or derived from proceeds obtained

directly or indirectly as a result of the violation in Count I, including but not

limited to approximately $69,318.00. If the above-described forfeitable property,

as a result of any act or omission of the defendants:  (a) cannot be located upon the

exercise of due diligence; (b) has been transferred or sold to, or deposited with, a

third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with other property

which cannot be divided without difficulty, it is the intent of the United States,

pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title

18, United States Code, Section 982(b), to seek forfeiture of any other property of

the defendant up to the value of the forfeitable property described above.

23

All in violation of Title 18, United States Code, Section 982(a)(6)(A).

A TRUE BILL

███████████████████████

FOREPERSON, GRAND JURY

12/12/07

*Martin C. Carlson*

**MARTIN C. CARLSON**
**ACTING UNITED STATES ATTORNEY**

12 · 12 · 07

**DATE**